IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| A.P., *a minor child, by and through her father and legal guardian*, JOSHUA PORTER,<br><br>  Plaintiff,<br>  v.<br><br>RUSSEL CARLSON, *in his official capacity as Commissioner of the Georgia Department of Community Health*,<br><br>  Defendant. | CIVIL ACTION<br>FILE NO. 1:23-cv-05205-TWT |

## **ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff A.P.'s Motion for Temporary Restraining Order and Preliminary Injunction. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief for violations of the Medicaid Act and the Due Process Clause of the Fourteenth Amendment. Plaintiff, a twenty-three-month-old female with significant complex medical conditions and disabilities, seeks a Temporary Restraining Order and Preliminary Injunction against Defendant Carlson, the Commissioner of the Georgia Department

of Community Health, to enjoin Defendant from denying Plaintiff 50 hours per week of private duty nursing services under the Georgia Pediatric Program ("GAPP").

Before a court will grant preliminary injunctive relief, the moving party must establish that: (1) "it has substantial likelihood of success on the merits," (2) it will suffer irreparable injury if the relief is not granted, (3) the threatened injury outweighs the harm the relief may inflict on the non-moving party, and (4) entry of relief "would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006). The decision as to whether a plaintiff carried this burden "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion. *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002).

First, Plaintiff must establish a substantial likelihood of success on the merits. The Medicaid Act mandates that states that participate in the Medicaid program provide EPSDT services to Medicaid-eligible children under age 21. 42 U.S.C. §§ 1396a(a)(43) & 1396d(r). Under EPSDT, children must receive all services and treatments covered by the Medicaid Act necessary to "correct or ameliorate" any physical and mental illnesses and conditions discovered during a screening. 42 U.S.C. § 1396d(r)(5); *see also Pittman v. Sec'y, Fla. Dep't of Health & Rehab. Servs.*, 998 F.2d 887, 889 (11th Cir. 1993). The state must provide any service

2

covered by EPSDT "whether or not such services are covered under the state plan." *Id.* In other words, Section 1396d(r)(5) requires that participating states must "cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)." *Moore v. Reese*, 637 F.3d 1220, 1233-34 (11th Cir. 2011). In cases in which the amount of a service to be provided is disputed, the Eleventh Circuit has identified the "pivotal issue" as whether the amount of nursing provided by the state is sufficient in amount to reasonably achieve the purposes of private duty nursing services to correct or ameliorate the plaintiff's conditions. *Id.* at 1257-58. Medicaid services "ameliorate" a condition when they maintain or improve a child's current health condition or when they prevent a condition from worsening or prevent the development of additional health problems. *See C.R. by & through Reed v. Noggle*, 559 F.Supp.3d 1323, 1336 (N.D. Ga. 2021) (citing U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., *EPSDT – A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents* at 10 (June 2014)).

Here, A.P. has made a showing that Defendant has breached his duty to ensure that A.P.'s private duty nursing services are sufficient in amount, duration, and scope to reasonably achieve the purpose of ameliorating her many complex conditions. A.P.'s treating physician, Dr. Wexler, has clearly explained in both her

3

letter of medical necessity and her declaration why A.P. requires 50 hours per week of private duty nursing services. The Court finds both to be credible. Dr. Wexler's declaration describes in detail A.P.'s complex medical conditions and her ongoing need for skilled nursing assessments and interventions related to her seizure disorder, respiratory status, and risk of aspiration. She describes A.P.'s ongoing need for skilled nursing assessments and interventions related to her seizure disorder and her risk of aspiration and respiratory distress, and her episodes of increased numbers of prolonged seizures. Dr. Wexler also took into account that A.P.'s parents need to work full-time jobs and that A.P. needs skilled nurses to provide her care when her parents are unavailable.

The Court finds A.P. is medically fragile. She has a seizure disorder and respiratory conditions that require skilled care 24 hours per day. She requires regular medications to control her seizures and emergency medications (Diastat and Valium) if she has a prolonged seizure lasting longer than five minutes or a cluster of seizures. Her respiratory status must be monitored including with a pulse oximeter when she has a seizure, and she requires intervention with oxygen and suctioning as needed. Her parents can provide much of her skilled care but not for 24 hours per day. The GAPP program's failure to take into consideration what care is required in addition to what the parents can be reasonably expected to

provide means they are not deciding this case and cases like this on the basis of medical necessity. They are deciding it based on a process that ignores the most important factor that exists in a case like this, that is, what skilled nursing care is provided during times when the child's parents cannot provide that nursing care.

Dr. Wexler's conclusion that 50 hours per week of private duty nursing services was required for A.P. while her parents work and are unavailable to provide care seems entirely reasonable and appropriate. The state has not given any reason why it failed to follow Dr. Wexler's recommendation.

Defendant's process of producing a decision in this case, as in others, seems entirely arbitrary, irrational, and not based on the medical necessity of the child and the real-world experiences that the child and her parents are living through.

Accordingly, A.P. has shown a substantial likelihood of success on the merits of her claims that Defendant has failed to fulfill his duty to provide A.P. with sufficient private duty nursing services to ameliorate her conditions.

Second, A.P. must establish irreparable injury if relief is not granted. The denial of medically necessary ameliorative care to Medicaid-eligible children constitutes irreparable harm. *C.R. v. Noggle*, 559 F.Supp.3d at 1342. More specifically, this Court has found the denial of medically necessary private duty nursing services to medically complex children like A.P. subjects them to

irreparable harm. *See J.B.R. v. Carlson*, 1:23-cv-04505-WMR at 7 (N.D. Ga. October 11, 2023) (concluding that without an explanation for why the plaintiff no longer needs 84 hours of skilled nursing care, "there is a concern that irreparable injury or death will occur if relief is not granted."); *J.M. v. Crittendon,* 1:18-CV-568-AT, 2018 WL 7079177, *7 (N.D. Ga. May 21, 2018) (concluding that denying the plaintiff skilled nursing where expert testimony established that his "complex medical condition could easily snowball and become life-threatening" would cause "irreparable injury"). A.P.'s treating physician has documented her need for private duty nursing services to manage her many complex care needs and to keep her healthy. Without these necessary services while her parents are working, A.P.'s health and well-being are in jeopardy. A.P. has unquestionably shown irreparable harm.

    Third, A.P. must establish that the threatened injury outweighs the harm the relief may inflict on the non-moving party.  Here, the balance of harm clearly lies in A.P.'s favor. Her treating physician has demonstrated her need for the private duty nursing she has prescribed for A.P.  Defendant has failed to provide any cogent reason for the denial of A.P.'s private duty nursing hours.  Defendant has a clear obligation under the Medicaid Act to promptly provide A.P. with all the necessary care she needs to correct or ameliorate her illnesses and conditions.  Entry of a

preliminary injunction will not harm Defendant. In contrast, the harm to A.P. if an injunction is not issued is evident and clearly outweighs any harm to Defendant. *See J.B.R. v. Carlson*, 1:23-cv-04505-WMR (October 11, 2023) ("[T]he Court finds that the threatened injury outweighs any harm relief would inflict on the non-movant. The Court cannot say that the cost of Defendant providing four additional hours per day of skilled nursing care to [the Plaintiff] outweighs the potential harm of death."); *J.M. v. Crittendon,* 1:18-CV-568-AT, 2018 WL 7079177, at *7 (N.D. Ga. May 21, 2018) ("A temporary solution of providing 96 hours of skilled nursing per week to Plaintiff will not harm Defendant in any substantial way. However, the potential harm to Plaintiff without these services is significant and outweighs any harm to Defendants.").

Fourth, A.P. must establish that entry of relief would not be adverse to the public interest. Granting a preliminary injunction will serve the public interest in upholding the law and ensuring this little girl receives the necessary medical care to which she is entitled under the Medicaid Act. *J.M.*, at *7 (concluding that ordering a TRO requiring ninety-six hours of skilled nursing care would "service the public interest in upholding the law and enforcing the mandates of the Medicaid Act").

For the reasons discussed above, the Court finds that A.P. has established all four requirements for the entry of a preliminary injunction. A.P.'s Motion for a Preliminary Injunction is **GRANTED**.

It is hereby **ORDERED** and **ADJUDGED**:

1. Defendant is enjoined from reducing A.P.'s private duty nursing hours below 50 hours per week.

2. Defendant is enjoined from evaluating A.P.'s requests for prior authorization of private duty nursing services using a standard other than the "correct or ameliorate" standard prescribed by 42 U.S.C. § 1396d(r)(5).

3. This preliminary injunction will remain in effect until further order of the Court.

SO ORDERED, this 20th day of December, 2023.

                                        Honorable Thomas W. Thrash, Jr.
                                        United States District Judge